UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN ODOM,

                              Plaintiff,

        -v-

GREGORY T. KERNS, BRIAN K. KNIGHT, JOHN
F. MEO, ROBERTO NIEVES, JOSEPH A.
PERKINS, KENNETH A. RACCA, RICHARD
RAKOCE, JAMES R. WILKIE, NICK SCALZO,
EILEEN CAVANAGH, STEPHANIE CHIESA,
ALBERT PAOLANO, RICHARD DOLING, and LT.
BROCKWAY,

                              Defendants.

No. 99-CV-10668 (KMK)(MHD)

OPINION AND ORDER

APPEARANCES:

Mr. Jonathan Odom
Auburn, New York
*Pro Se Plaintiff*

Michael J. Keane, Esq.
Office of the Attorney General
State of New York
New York, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Jonathan Odom ("Plaintiff"), who is incarcerated by the State of New

York serving an aggregate minimum sentence of twenty-four years, brings this action under 42

U.S.C. § 1983 ("Section 1983"), alleging that he suffered assault, forced medication, deliberate

indifference to medical needs, abuse of due process, and use of excessive force.  Defendants

Nick Scalzo ("Scalzo"), Eileen Cavanagh ("Cavanagh"), Stephanie Chiesa ("Chiesa"), Albert

Paolano ("Paolano"), Richard Doling ("Doling"), and Lt. Brockway ("Brockway") move for summary judgment on all claims against them.[1]  Plaintiff moves for an order compelling the return of his hearing aid and kit, and for appointment of counsel.  For the reasons stated in this Order, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART without prejudice to renewal of certain elements consistent with this Order; Plaintiff's Motion for an order directing return of his hearing aid and kit is DENIED without prejudice to renewal; and Plaintiff's Motion for appointment of counsel is DENIED, also without prejudice to renewal.

## I.  Background

### A.  Plaintiff's Litigation History

The Honorable Thomas P. Griesa, then Chief District Judge for the Southern District of New York, found in 1996 that this Plaintiff "is a savvy *pro se* litigant who has abused this Court's resources."  *Odom v. Coombe*, No. 96-CV-6629, slip op. at 6 (S.D.N.Y. Dec. 24, 1996) [hereinafter *PLRA Order*].  Judge Griesa recounted the many frivolous or malicious actions Plaintiff had brought in this court that "lacked an arguable basis either in law or in fact" and that resulted in Plaintiff being barred, under the Prison Litigation Reform Act ("PLRA"), from filing any new actions in forma pauperis ("IFP") in this District Court.  *Id.* at 5-6 (internal quotation

---

[1] Defendants' Notice of Motion specifies that summary judgment is sought only as to Defendants Nick Scalzo, Eileen Cavanagh, Stephanie Chiesa, Albert Paolano, Richard Doling, and Lt. Brockway.  (Dkt. No. 147.)  The Motion does not implicate Plaintiff's claims against Defendants Gregory T. Kerns, Brian K. Knight, John F. Meo, Roberto Nieves, Joseph A. Perkins, Kenneth A. Racca, Richard Rakoce, and James R. Wilkie.  The Court observes that although some documents filed (such as Defendants' Notice of Motion) continue to caption Peter Idemo as a Defendant, he was not named in Plaintiff's Amended Complaint and therefore has been terminated on the Docket as a Defendant in this case.

marks omitted); *see* 28 U.S.C. § 1915(g).

Plaintiff has remained an extraordinarily active litigant, notwithstanding the bar to proceeding IFP. In July 1999, Plaintiff unsuccessfully brought suit against eighty defendants, alleging violation of his constitutional rights "in retaliation for having filed a federal civil rights action and grievances against the prison system, its officers, and its administrators." *Odom v. Poirer*, No. 99-CV-4933, 2004 WL 2884409, at *1 (S.D.N.Y. Dec. 10, 2004) (Daniels, J.). In August 1999, Plaintiff sought habeas relief, which was denied. *Odom v. Duncan*, No. 99-CV-9088, 2005 WL 3288140 (S.D.N.Y. Dec. 2, 2005) (Mukasey, C.J.). In October 1999, Plaintiff brought this case, addressed in detail *infra*. In April 2000, Plaintiff sought to bring a Section 1983 suit against thirty named defendants, although the complaint was dismissed prior to service by then-Chief Judge Mukasey. *Odom v. Bernardi*, No. 00-CV-3171 (S.D.N.Y. Apr. 26, 2000). In December 2006, Plaintiff brought a Section 1983 suit against eleven employees of New York Department of Correctional Services ("NYDOCS") alleging various torts against him including false misbehavior reports, improper conduct at a disciplinary hearing, and – interestingly – "denial of access to the courts." *See Odom v. Calero*, No. 06-CV-15527, 2008 WL 449677, at *1 (S.D.N.Y. Feb. 19, 2008).

Plaintiff has also filed actions in other courts. For example, in October 2002, Plaintiff sued several correction officers in the Western District of New York, claiming that they violated his constitutional rights in May 2000 by locking him in the shower and searching his court materials. *Odom v. Baker*, No. 02-CV-757, 2008 WL 281789, at *1 (W.D.N.Y. Jan. 31, 2008).

Although Plaintiff does not appear to have filed any new cases in the Eastern District of New York since Judge Griesa's *PLRA Order*, he did take a Section 1983 case against NYDOCS

officials to jury trial there on March 24-26, 2003, which resulted in a verdict for Defendants.  *See Odom v. Sielaff*, No. 92-CV-1132 (E.D.N.Y. filed Mar. 11, 1992).[2]  In November 2004, Plaintiff sued various correction officers and food service officials alleging statutory religious freedom and various constitutional claims concerning his alleged kosher diet.  *Odom v. Dixion*, 04-CV-889, 2008 WL 466255, at \*1 (W.D.N.Y. Feb. 15, 2008) ("According to Plaintiff, Defendants failed to provide Plaintiff with the proper utensils to open hermetically sealed kosher food packs . . . .").  In October 2005, Plaintiff sued several correction officers in the Northern District of New York, claiming to have been assaulted by them in April 2005, in retaliation for his having previously filed grievances regarding the conditions of his confinement.  *Odom v. Stevens*, No. 05-CV-1339 (N.D.N.Y. Apr. 11, 2006).  In November 2007, Plaintiff sued various officials in the Western District of New York, yet again claiming that they had assaulted him and then denied him medical care.  *Odom v. Stevens*, No. 07-CV-0792 (W.D.N.Y. filed Nov. 28, 2007).

Although this Court has not searched the relevant dockets, Plaintiff is also a frequent filer in other courts.  *Cf. PLRA Order* at 4-5 ("Plaintiff admits that he is currently litigating in the United States Court of Appeals for the Second Circuit . . . as well as litigating a number of matters in New York state courts.").

B.  Facts

Plaintiff was incarcerated in the custody of the State of New York on April 1, 1998, when he was transferred from Great Meadow Correctional Facility ("Great Meadow") to Downstate

---

[2] Even after a jury verdict against him, Plaintiff evidently continued to file spurious motions in this case, including one requesting that the chambers staff of the judge who tried the case "manually count the number of pages contained in the civil case file," where the docket sheet included "some 232 entries."  *Odom v. Sielaff*, No. 92-CV-1132 (E.D.N.Y. Jun. 23, 2003).

4

Correctional Facility ("Downstate"), allegedly to attend a deposition in a federal lawsuit. (Defs.'
Statement Pursuant to Rule 56.1 ¶¶ 1- 2, 5 ("Defs.' 56.1").) At relevant times prior and
subsequent to April 1, 1998, Plaintiff was otherwise housed at Great Meadow. (*Id.* ¶ 3.) While
at Downstate, Plaintiff refused an injection of psychiatric medication. Several of the Defendants
attempted to restrain and subdue him in order to administer the medication. (*Id.* ¶¶ 9-11.)
Plaintiff alleges that during this attempted restraint, Defendants Kerns, Knight, Meo, Nieves,
Perkins, Racca, Rakoce and Wilkie assaulted him. (*Id.* ¶ 14.) After the alleged assault,
Defendant Scalzo, a nurse at Downstate, administered the injection of medication. (*Id.* ¶ 12.)

 Thereafter, several Defendants took Plaintiff to the prison hospital, where Defendant
Chiesa photographed and fingerprinted Plaintiff and then Defendant Cavanagh, a nurse at
Downstate, examined him. (*Id.* ¶¶ 13, 15, 26.) Cavanagh examined open wounds on Plaintiff's
ankles and feet, directed that photographs be taken, and stated in her report that no further
treatment was required. (Am. Compl., Ex. C.) Plaintiff alleges this lack of treatment was due to
his wounds being inflicted by NYDOCS personnel. (*Id.* ¶ 17.) On April 20, 1998, Plaintiff filed
a grievance regarding his medical treatment on April 1, 1998, which the Inmate Grievance
Review Committee ("IGRC") referred to as a "multiple injury grievance." (Objections of State
Defs. to the Magistrate's Report and Recommendation ("Obj."), Exs. A, E.) Plaintiff himself
titled the grievance: "Grievance complaining about being deliberately denied medical treatment
for my injuries I sustained on 4/1/98." (*Id.*, Ex. A.) In the grievance, Plaintiff complained of an
aching jawbone, infected wounds, loss of hearing in his left ear and a sore rib cage, among other
issues. The IGRC decided the grievance in Plaintiff's favor, and on May 4, 1998, Plaintiff met
with a doctor, Defendant Paolano.

Dr. Paolano's treatment notes from the May 4 meeting describe an infected ulcer on Plaintiff's left foot, which he noted may have been an old or chronic injury. (Dec. 3, 2002 Aff. of Jonathan Odom ("Odom Aff."), Ex. E.)[3] He provided Plaintiff with treatment for his infection and ordered an x-ray of his feet. (*Id.*) Plaintiff indicated that he agreed with the IGRC's resolution to grant relief "as per Dr. Paolano's statement of 5/4/98," and his only complaint with the resolution of his grievance concerned the administration of his special dietary needs.[4] (Obj., Ex. A.) No mention of ear pain is included in his appeal statement, nor is it discussed in Dr. Paolano's treatment notes.[5] Plaintiff claims that his eardrum was ruptured during the attack of

---

[3] Dr. Paolano's treatment notes are entered on a report that also indicates medical treatment administered to Plaintiff on April 8, 1998, including x-rays of Plaintiff's jaw. (Odom Aff., Ex. E.) The notes document swelling and abrasions on Plaintiff's ankles, which are characterized as "old injuries." No Party discusses this visit to the medical area, who treated the Plaintiff at this time, or whether any treatment was provided.

[4] In his appeal statement to the Central Office Review Committee, Plaintiff wrote: "There was no medical treatment plans which were consider[ed] regarding my stomach problems, especially when my Special Low Fat Diet meals are not being issued to [me] by Officer D. Porlier." Plaintiff's "Action Requested" stated: "(1) To be given X-ray on my left foot and place a cast on it; (2) To provide for an alternative method for me to be able to receive my SHU mandatory showers, after my cast is placed on my left foot." (Obj., Ex. A.)

[5] In a memorandum to Superintendent Stinson dated May 4, 1998, Dr. Paolano indicated that Plaintiff had only three complaints: "(1) sinus/allergy; (2) G.I. gas, diarrhea, diet; and (3) left ankle pain/infection." (Obj., Ex. A; Am. Compl. Ex. E.) The memo did not mention ear pain. Although both sides submitted this memo, it is not authenticated.

In addition to the "multiple injury grievance," Plaintiff also submitted a copy of a grievance appeal statement that stated he had pain and hearing loss in his left ear soon after the alleged assault. (Odom Aff., Ex. H.) This document is odd for a number of reasons. First, this appeal statement was not signed by the Grievance Clerk. Second, the grievance number is identical to that of Plaintiff's "multiple injury" grievance, filed on April 20, 1998, even though this document states the grievance was filed on April 8, 1998. Third, the title of the grievance, "stomach problems," does not correspond to the complained-of malady, but it does correspond to a different grievance, No. 27055/98, filed on April 8th by Plaintiff, complaining of stomach ailments. Additional documentation on this grievance, from either side, is notably absent. For purposes of this motion, however, the Court must draw all factual inferences in favor of Plaintiff. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006).

6

April 1, 1998. (Am. Compl. ¶¶ 21, 53.) He alleges his eardrum was first examined on August 26, 1998, when an outside ear specialist found a hole in it that required surgery. (*Id.* ¶ 53.) After this assessment, Plaintiff claims that Dr. Paolano refused to provide antibiotics or send him to an outside hospital for ear surgery. (*Id.* ¶¶ 21, 53-55.) In 1999, Plaintiff visited the medical area at Great Meadow at least twelve times. (*Id.*, Ex. E.) He complained of ear problems on only one of those visits, at which time he was prescribed antibiotics. (*Id.*) Plaintiff underwent surgery to reconstruct his eardrum on February 10, 2000. (Odom Aff., Ex. I.)

Plaintiff further alleges that certain Defendants brought false disciplinary charges against him based on the April 1, 1998 attack at Downstate. (Defs.' 56.1 ¶ 8.) On April 22, 1998, Defendant Doling found Plaintiff guilty of disciplinary infractions and sentenced him to segregation in the Special Housing Unit ("SHU"). (*Id.* ¶ 27.) The hearing decision was reversed on June 22, 1998, on grounds that the tape recording of the hearing was incomplete. (*Id.*; Obj., Ex. G.) On June 30, 1998, Defendant Brockway found Plaintiff guilty of disciplinary infractions in a rehearing. (Defs.' 56.1 ¶ 28.) Plaintiff was again sentenced to segregation in the SHU. (*Id.*) Plaintiff alleges that he was not permitted to call witnesses at either hearing. (*Id.*) The determination of the hearing held on June 30, 1998, was also reversed on August 20, 1998, because a mandatory mental health assessment had not been ordered. (*Id.*) Plaintiff spent a total of 142 days in the SHU. (*Id.* ¶ 73.)

C. Procedural History

Defendants moved for summary judgment, and the Motion was referred to Magistrate

Judge Michael H. Dolinger.[6]  Judge Dolinger issued a Report and Recommendation ("R&R")

concluding that the Court should deny Defendants' Motion except that it should grant dismissal

without prejudice as to claims against Defendant Chiesa.  (R&R 50.)  Judge Dolinger further

recommended that Plaintiff be given thirty days to replead any claims against Chiesa and that the

Court appropriately structure an opportunity for Defendants to assert a defense of exhaustion of

administrative remedies.  (*Id.* 46 n.20, 48.)

Defendants filed timely and specific objections to the R&R, which are as follows:

1) Plaintiff failed to exhaust available administrative remedies (Obj. 12-16);

2) Plaintiff's deliberate indifference claims raise no issue of fact (*id.* 16-20);

3) Due process is not implicated by inmate disciplinary hearings (*id.* 20-25); and

4) Defendants are entitled to qualified immunity defeating all claims (*id.* 25-27).

Plaintiff has also moved for an order directing Defendant Paolano and other medical

personnel to return Plaintiff's hearing aid and kit to him.  (Dkt. No. 142.)

Lastly, Plaintiff has moved for appointment of counsel.  (Dkt. No. 144.)

## II.  Defendants' Motion for Summary Judgment

### A.  Standard of Review

Summary judgment may be granted when it is shown that there is "no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court must view all

---

[6] This case, filed on October 21, 1999, was initially assigned to Judge Denise L. Cote. Judge Cote ordered this Motion referred to Magistrate Judge Dolinger for report and recommendation.  On November 6, 2003, the case was reassigned to Judge P. Kevin Castel.  On September 3, 2004, it was reassigned to this Court.

evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *See Tufariello*, 458 F.3d at 85. A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006). "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Id.* (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)) (alteration in original); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) ("[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." (internal quotation marks omitted)).

The materiality of the facts considered by the Court will be governed by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the Court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See W. Elec. Corp. v. N.Y. City Transit Auth.,* 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (citing *Anderson*, 477 U.S. at 249). A court's goal should be to "isolate and dispose of factually unsupported claims. . . ." *Celotex*, 477 U.S. at 323-24.

"It is well established that the submissions of a *pro se* litigant must be construed liberally

and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis in original). This more lenient approach to construing a *pro se* plaintiff's pleadings, however, "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).

The Court reviews issues raised by Defendants' timely and specific Objections to the R&R under a de novo standard. *See* Fed. R. Civ. P. 72(b); *Cunningham v. City of New York*, 04-CV-1998, 2006 WL 1520210, at *2 (S.D.N.Y. June 1, 2006). It reviews the remainder of the R&R for clear error only. *See id.*

B. Analysis

1. Affirmative Defense of Failure to Exhaust Administrative Remedies

Defendants argue in their Objections to the R&R that this Court should dismiss all of Plaintiff's claims due to an alleged failure to exhaust administrative remedies. While Defendants raised failure to exhaust as an affirmative defense in their Answer, they did not adequately present it in this Motion for Summary Judgment as referred to Magistrate Judge Dolinger, mentioning it – in the course of seeking leave to further brief and without providing a factual basis – only in their Reply Memorandum. (R&R 47; Reply Mem. of Law in Supp. Of Defs.' Motion for Summ J. 5-7.) It is within the discretion of the Court to consider additional evidence when evaluating objections to a report and recommendation. *See* Fed. R. Civ. P. 72(b); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). A party may not, however, introduce an entirely new basis for summary judgment by means of objections to a report and recommendation. *See*

*Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that while the

Magistrate Judge Act . . . permits de novo review by the district court if timely objections are

filed, absent compelling reasons, it does not allow parties to raise at the district court stage new

arguments or issues that were not presented to the magistrate."); *Mims v. United States*, No. 06-

CV-166, 2006 WL 2559534, at *2 (E.D. Tex. Sept. 1, 2006) ("The Fifth Circuit has held that

issues raised for the first time in objections to the Report of the Magistrate Judge are not

properly before the District Court.");  *Morales v. Santor*, No. 94-CV-217, 1995 WL 760625, at

*2 (N.D.N.Y. Dec. 4, 1995) (refusing to consider issues raised for the first time in objections to a

magistrate judge's report and recommendation); *see also Hynes*, 143 F.3d at 656

("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for

the Magistrate Judge's consideration . . . .").  As this argument is not properly before the Court,

the Court will not consider it.  *See Morales*, 1995 WL 760625, at *2.  Thus, to the extent

Defendants' Motion relies on a failure to exhaust defense, it is denied without prejudice to

Defendants, who may later seek to move on this affirmative defense by a new motion.

### 2.  Claim of Deliberate Indifference to Serious Medical Needs

Defendants also object to the recommendation that the Court deny summary judgment in

their favor on Plaintiff's claim that Defendants Cavanagh and Paolano exhibited deliberate

indifference to Plaintiff's serious medical needs.[7]  In short, their argument concedes all of

---

[7] Defendants lump Plaintiff's forced medication claim, discussed on pages 18-21 of the R&R, with his other deliberate indifference claims.  Defendants argue that the Defendants' decision to forcibly medicate Plaintiff did not violate his Eighth Amendment rights and that the Plaintiff, therefore, cannot make out a due process claim.  Magistrate Judge Dolinger pointed out, correctly, that the cases cited by Defendants do not support their legal argument and that these cases were, in any event, cited in violation of Second Circuit Rule § 0.23, prohibiting the citation as precedent of any unpublished or summary Second Circuit dispositions.  (R&R 20-21.)

Plaintiff's allegations regarding his injuries but asserts that those injuries were not so serious as to rise to the level of a constitutional violation. The Court is unpersuaded.

The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment. The Supreme Court has stated that the Constitution "does not mandate comfortable prisons," and that "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotations marks and citations omitted). The Eighth Amendment does, however, protect inmates when they receive care from prison officials and is violated when a prison official demonstrates "'deliberate indifference to [a] serious medial need[].'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994) [hereinafter *Hathaway I*] (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Such violation may give rise to a Section 1983 claim. *See Hernandez v. Goord*, No. 02-CV-1704, 2006 WL 2109432, at *5 (S.D.N.Y. July 28, 2006).

To make out a Section 1983 claim for deliberate indifference to serious medical needs, Plaintiff must satisfy both an objective and a subjective prong. *See id*. To satisfy the objective prong, "the alleged deprivation must be 'sufficiently serious.'" *Id*. (quoting *Wilson*, 501 U.S. at 298). A deprivation is sufficiently serious when it involves "'a condition of urgency, one that may produce death, degeneration or extreme pain.'" *Id*. (quoting *Hathaway I*, 37 F.3d at 66).

---

Defendants provided no additional evidence in support of summary judgment on Plaintiff's forced medication claim with their Objections. As Defendants have made no attempt to analyze Plaintiff's forced medication claim under the applicable legal standards for a due process claim, it is impossible for the Court to say that there is no material question of fact on that issue. *See Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (stating that inmates have a "significant liberty interest" in avoiding forced administration of anti-psychotic drugs that is actionable under the Due Process Clause of the Fourteenth Amendment).

Factors to be considered include whether "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original). Further, "[i]t is well established that more than minor discomfort or injury is required for a plaintiff to demonstrate a serious medical need." *See Hernandez*, 2006 WL 2109432, at *5. Failure to satisfy the objective prong precludes the need for analysis under the subjective prong. *See id*. at *6.

Regarding the subjective element, "the prison official involved must have acted with a 'sufficiently culpable state of mind.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This is satisfied by a showing that the official acted with "deliberate indifference" towards Plaintiff's health or safety, a state of mind that is "more blameworthy than negligence." *Farmer*, 511 U.S. at 834-35. "The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (internal quotation marks omitted). Negligence is insufficient to show a violation of the Eighth Amendment. *See Hernandez*, 2006 WL 2109432, at *6.

13

a.  Claim of Deliberate Indifference Against Nurse Cavanagh

Plaintiff claims that Cavanagh was deliberately indifferent to his medical needs when she did not recommend additional treatment for the wounds on his feet, which later became infected.[8]  (Am. Compl. ¶ 39.)  Whether Plaintiff meets the objective element in this case is a close call.  It was obvious that Plaintiff was injured at the time he was examined by Cavanagh. (*Id.*, Ex. D.)  Photographs demonstrate lacerations on Plaintiff's ankles and ulcerations on his feet.  (*Id.*)  In her Report of Inmate Injury, Cavanagh noted the injuries and, in the blank marked "treatment provided," stated that Plaintiff had been provided a shower.[9]  She also stated that no further treatment was necessary.  (*Id.*, Ex. C.)

Plaintiff alleges that he had cuts on his feet and ankles that later became infected.  There is no evidence in the record that the cuts were infected at the time Plaintiff was examined by Cavanagh.  Magistrate Judge Dolinger is correct that Plaintiff's wounds were of the type that "a reasonable doctor or patient would find important and worthy of comment or treatment," but that is only one factor to consider.  *See Chance*, 143 F.3d at 702.  Here, consideration of the other factors described by the Second Circuit in *Chance* makes this a much closer case.[10]  Though there is no evidence that the cuts would inhibit Plaintiff's daily activities or that he would be in

---

[8] Plaintiff does not assert that Cavanagh was ever aware of his ear condition and Cavanagh cannot be indifferent to a condition about which she was unaware.  Thus, the only claim raised against Cavanagh is for the treatment of Plaintiff's ankles and feet, which were the subject of the examination of April 1, 1998.

[9] According to the report, Plaintiff required a shower because he had "smeared feces on self."  (Am. Compl., Ex. C.)

[10] Further, *Chance* was an appeal of a dismissal for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  Here, Plaintiff's claims must survive the more rigorous standards of Rule 56.

chronic pain,[11] Plaintiff's scrapes and cuts did show a significant risk of further injury, as they could have (and did) become infected. *See id.* (failure to treat dental pain may constitute deliberate indifference); *see also Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (failure to treat cavity for one year can evidence deliberate indifference). That is sufficient for Plaintiff's claim to survive summary judgment. *See Chance*, 143 F.3d at 702 ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment.").

Whether Plaintiff has produced sufficient evidence to survive summary judgment on the subjective element is likewise a close call. To succeed against Cavanagh, there must be sufficient evidence in the record so that a reasonable jury could find that in refusing Plaintiff treatment she knowingly disregarded a serious risk to inmate safety. *See Hemmings*, 134 F.3d at 108. Here, the risk came from his injuries, and she was obviously aware of them, as she noted them in her report. There is little evidence in the record that she was aware of any risk other than those that, based on her own medical judgment, did not necessitate further treatment. Plaintiff did not inform her of his pain, and there is no evidence that she was aware of any other risk, such as a disruption to his daily activities or the possibility of chronic pain. Mere negligence is insufficient to establish a claim of deliberate indifference. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) [hereinafter *Hathaway II*].

---

[11] The only evidence of pain in the record is Plaintiff's deposition testimony, cited by Magistrate Judge Dolinger (R&R 24-25), that there was a "hole" in his foot and that he could see "red meat" in his cuts. Plaintiff testified that he did not tell Nurse Cavanagh about his extreme pain because the correction officers had told him not to talk to the nurse. (Defs.' 56.1, Ex. B.)

What distinguishes this case from a typical negligence case, however, is that Cavanagh provided Plaintiff with *no* treatment for his cuts and open wounds. Provision of no treatment to an inmate's injuries raises much more serious questions of deliberate indifference. *See Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("Although federal courts are reluctant to second guess medical judgments and constitutionalize [medical malpractice claims] where the prisoner has actually received medical treatment, deliberate indifference will be found where the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all." (internal quotation marks and citations omitted) (alterations in original)); *see also Harrison*, 219 F.3d at 138 ("It follows that (1) outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated *and* (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials."). It is not unreasonable to think that Plaintiff should have been offered *some* treatment, such as the anti-biotics that were provided to him one month later to address the infected sores on his feet, (Odom Aff., Ex. E), and that a jury could reasonably conclude that Cavanagh's refusal to provide any treatment constituted deliberate indifference to his serious medical needs.[12] Plaintiff's wounds, as evidenced by the photographs in the record, were sufficiently serious to raise a material question of fact regarding Cavanagh's alleged indifference to Plaintiff's medical needs.

---

[12] The facts do not clearly support Plaintiff's version of events. It could be inferred from the fact that only one of the four wounds Plaintiff complains of became infected and that the doctor treating that infection stated the wound was potentially an old injury, that Nurse Cavanagh's course of treatment was reasonable. At this stage, however, the Court may not draw such inferences and grant summary judgment. *See Tufariello*, 458 F.3d at 85 (stating that on summary judgment a court must construe evidence in light most favorable to plaintiff, drawing all reasonable inferences and resolving all ambiguities in his favor).

b.  Claim of Deliberate Indifference Against Dr. Paolano

Plaintiff claims that Dr. Paolano was deliberately indifferent to his serious medical needs when he did not immediately schedule him for ear surgery after becoming aware of his ruptured eardrum on May 4, 1998.  Although there is some dispute over whether Dr. Paolano was actually aware of Plaintiff's eardrum injury in May 1998, there is no dispute that he was aware of it later that year when Plaintiff was referred by the prison to an outside ear specialist.  (Am. Compl., Ex. E.)  Magistrate Judge Dolinger concluded that Defendants had not produced sufficient evidence to show as a matter of law that Dr. Paolano did not ignore Plaintiff's bleeding, ruptured ear drum for more than one year and he held that such an injury would have been sufficiently serious to be actionable under Section 1983.  (R&R 29.)  Defendants' Objections do not challenge any of the evidence relied upon by Magistrate Judge Dolinger or dispute any of his factual findings; they merely assert that Plaintiff's claims do not, as a matter of law, rise to the level of an Eighth Amendment violation and that, therefore, the deliberate indifference claims must fail.

Defendants are incorrect as a matter of law.  As described above, the refusal to treat a chronic, painful condition for a long period of time can constitute deliberate indifference.  *See Harrison*, 219 F.3d at 138; *Chance*,143 F.3d at 702.  The Court has reviewed this issue de novo, but reaches the same conclusion as did Magistrate Judge Dolinger.  There is no evidence in the record that explains the lengthy gap between when Defendants became aware of Plaintiff's injury in August 1998, and the date of his surgery in February 2000.  Plaintiff alleges he was in pain, and there is evidence that corroborates this claim.  (Am. Compl., Ex. E.)  On the evidence currently in the record, a reasonable jury could conclude that Dr. Paolano was deliberately indifferent to Plaintiff's eardrum rupture.

3.  Due Process Claims

Defendants next objection is to Magistrate Judge Dolinger's recommendation that this Court deny summary judgment on Plaintiff's claim that his due process rights were violated by "biased" disciplinary hearings conducted by Defendants Doling and Brockway.  Plaintiff claims these hearings were biased because:  (1) Plaintiff was denied the opportunity to call witnesses; and (2) Defendant Doling allegedly tampered with the tape recording of Plaintiff's hearing, thereby destroying any means of adequate review.  To make out a due process claim, Plaintiff must demonstrate:  "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation marks omitted).  An inmate may demonstrate a deprivation of his liberty interest under the Due Process Clause of the Fourteenth Amendment if a prison condition imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin*).  Thus, to make out a due process claim against Defendant Brockway or Defendant Doling, Plaintiff must show:  (1) that his 142 days in the SHU constituted a deprivation of a protected liberty interest; and (2) that such deprivation was the result of the procedural defects he identifies, specifically, Defendants' refusal to allow him to call witnesses and the alleged tampering with the hearing tape.  Because the second prong of this test clearly resolves the claim, the Court assumes the first prong to be satisfied, notwithstanding the conflicting theories for measuring Plaintiff's sentence served in the SHU.[13]

---

[13] For a liberty interest to be protected, Plaintiff "must establish both that the confinement or restraint creates an atypical and significant hardship under *Sandin*, and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from

a.  Refusal to Allow Witnesses at Plaintiff's Disciplinary Hearings

An inmate must be afforded due process of law before being deprived of a liberty interest.  *See Giano*, 238 F.3d at 226.  Under *Wolff v. McDonnell*, due process requires the state to provide the prisoner with the following minimum:  advance written warning of the charges against him, the opportunity to call witnesses, and a written final decision on the hearing describing how the state reached its determination.  418 U.S. 539, 563-67 (1974).  Plaintiff contends that he was deprived of liberty interests by unfair, biased hearings in which he was not allowed to call witnesses.

While Plaintiff has a right to call witnesses in his defense, the correctional facility may deny the request "for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id*. at 566; *see also Hattley v. Goord*, No. 02-CV-2339, 2006 WL 785269, at *4 (S.D.N.Y. Mar. 27, 2006) ("An inmate's request to call a witness can also be denied on grounds of irrelevance or lack of necessity.  It is within the discretion of prison administrators to balance these competing

that confinement or restraint." *Hynes*, 143 F.3d at 658 (internal quotation marks omitted).  As an initial matter, New York State has granted its inmates a liberty interest in not being confined to the SHU.  *See Palmer*, 364 F.3d at 64 n.2 ("It is undisputed . . . that New York state law create[s] a liberty interest in not being confined to the SHU." (internal quotation marks omitted) (alterations in original)); *see also Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) ("The Second Circuit repeatedly has held that New York law grants inmates a protected interest in remaining free from segregated confinement.").  To determine whether a disciplinary method is atypical or a significant hardship, the Court must consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer*, 364 F.3d at 64 (internal quotation marks omitted).  When evaluating whether periods of confinement in the SHU implicate an inmate's liberty interests, the Second Circuit has "avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Id*.  Generally, however, if the period of SHU confinement is less than 101 days, assuming the conditions were not too severe, the court will not find atypicality or a significant hardship. *See id*. at 64-65.

interests and keep the hearing within reasonable limits." (internal quotation marks and citations omitted)).  Thus "prison authorities are given broad discretion to deny an inmate's request to call witnesses . . . ."  *Liner v. Goord*, 115 F. Supp. 2d 432, 436 (S.D.N.Y. 2000); *see also Branch v. Goord*, No. 05-CV-6495, 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (holding that requested witnesses who could not see events in question were irrelevant).  If a prison official denies an inmate's request to call witnesses, he must do so "either by making the explanation a part of the administrative record in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing.  In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it later."  *Ponte v. Real*, 471 U.S. 491, 497 (1985) (internal quotation marks omitted); *see also Chandler v. Moran*, No. 03-CV-2024, 2005 WL 2249779, at *8 (S.D.N.Y. Apr. 25, 2005) (stating that prison officials may explain decision to deny witnesses in the administrative record or at a court hearing).  If the decision to deny a witness is challenged, the prisoner need not prove the witness was necessary; rather, the burden is on the prison official to show that the denial was rational.  *See Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30-31 (2d Cir. 1991).

Plaintiff claims that he was not allowed to call witnesses at either the April 22 hearing or the June 30, 1998 rehearing.  The record considered by Magistrate Judge Dolinger contained no evidence relating to Plaintiff's requests for witnesses.  Defendants have since supplemented that record with the full administrative record from both of Plaintiff's disciplinary hearings.[14]  (Obj.,

---

[14] As noted *supra*, the Court may consider this supplemental evidence at its own discretion.  *See Hynes*, 143 F.3d at 656.

20

Exs. G, H.)  Regarding Plaintiff's April 22 hearing conducted by Defendant Doling, the record

now contains "Requested Inmate Witness Refusal to Testify in Tier II/Tier III Disciplinary

Hearing" forms filled out and signed by several inmates.  (*Id.*, Ex. G.)  These witnesses all

indicated that they did not want to be involved in Plaintiff's hearing.  (*Id.*)  A witness's refusal to

testify is a rational reason for denying Plaintiff's request to call witnesses.  *See Matos v. Goord*,

699 N.Y.S.2d 780, 781 (App. Div. 1999) (rejecting petitioner's claim that he was improperly

denied witnesses at prison disciplinary hearing where such denial was because the "witness he

requested refused to testify"); *Breazil v. Senkowski*, 605 N.Y.S.2d 460, 461 (App. Div. 1993)

(same); Guadalupe v. Coughlin, 524 N.Y.S.2d 157, 158-59 (Sup. Ct. 1988) (same).  As these

forms were made part of the administrative record of Plaintiff's hearing and provided to him

(Obj., Exs. G, H), Defendant Doling fulfilled his obligations to notify Plaintiff of his decision.

*See Ponte*, 471 U.S. at 497-98; *see also* N.Y. Comp. Codes R. & Regs. Tit. 7, § 254.5(a) (2008)

("[T]he hearing officer shall give the inmate a written statement stating the reasons for the

denial . . . .").

    The same is true for Plaintiff's June 30, 1998 rehearing.  Defendants have added to the

record a complete copy of the administrative record from Plaintiff's disciplinary hearing.  (Obj.,

Ex. H.)  In that administrative record, Defendant Brockway explained his decision to deny

Plaintiff the right to call his requested witnesses.  Officer Brockway stated, in his written denial

of Plaintiff's request, that the inmates requested as witnesses by Plaintiff could not observe what

went on in Plaintiff's cell, and thus they were not qualified to be witnesses.  (*Id.*)  In other words,

Officer Brockway concluded that the proposed witness testimony would be irrelevant.  This is a

valid ground for a denial of a request to call witnesses, *see Hattley*, 2006 WL 785269, at *4, and,

21

in this case, it was rational. *See Branch*, 2006 WL 2807168, at *4-5. All of the events that were at issue in the disciplinary hearing occurred in Plaintiff's cell; if the proposed witnesses could not see into that cell, there was no need for their testimony. Thus, Plaintiff has not raised a triable issue of fact as to whether the denial of his requests to call witnesses constituted a denial of due process.

b. The Alleged Tampering with the Tape of Plaintiff's Hearing

Plaintiff also alleges that Defendant Doling deliberately destroyed part of the hearing tape of his original disciplinary hearing. As an initial matter, Plaintiff has no federal right to the recording or electronic record of his disciplinary hearing. *See Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002); *see also Brito v. Coughlin*, No. 88-CV-8064, 1989 WL 241718, at *2 (S.D.N.Y. July 31, 1989) (noting that Due Process Clause "does not require . . . that a transcript be made or given to an inmate after a disciplinary hearing"). The recording requirement is created by state law, 7 N.Y. Comp. Codes R. & Regs. tit. 7, § 253.6(b), and "[v]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'" *Dixon*, 224 F. Supp. 2d at 744-45 (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)) (alteration in original). Thus, the fact that Plaintiff's hearing tape was incomplete is insufficient to assert a claim for a violation of federal due process protections.

Plaintiff's tampering allegation raises more difficult questions. Although Plaintiff does not have a right to the hearing tape, he does have a right to a hearing by an impartial hearing officer. *See Russell v. Selsky*, 35 F.3d 55, 59-60 (2d Cir. 1994); *see also Chavis v. Flagler*, No. 01-CV-0510, 2005 WL 563055, at *4 (W.D.N.Y. Mar. 8, 2005) ("'An inmate subject to a

22

disciplinary hearing is entitled to an impartial hearing officer.'" (quoting *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.1996))). Serious questions of impartiality would surround any officer who tampers with the record of a disciplinary hearing. *See Palmer v. Goss*, No. 02-CV-5804, 2003 WL 22327110, at *6 (S.D.N.Y. Oct. 10, 2003) (noting that tampering with hearing tape implicates inmate's due process rights), *aff'd Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004) . There is no evidence in the record, however, of any tampering with the tape. Although Plaintiff's allegations are quite serious, he must, at the summary judgment stage, rely on more than his own conclusory allegations; to avoid summary judgment, Plaintiff must offer "some hard evidence" of his version of the facts. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998); *see also McPherson*, 457 F.3d at 215 n.4 ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). Here, there is none. In fact, in his own appeal of the initial decision, Plaintiff simply claimed that the hearing was not recorded, not that there was any intentional effort by Defendant Doling to tamper with the record of the hearing. (Obj., Ex. G).[15]

### c. Summary as to Due Process Claims

Plaintiff's allegations that his disciplinary hearings were unfair because he was not allowed to call witnesses or that the tape of his hearing was lost or tampered with are insufficient to raise any issue of material fact as to whether he was deprived of due process. Accordingly, summary judgment in favor of Defendants Brockway and Doling is granted.

---

[15] The facts here are thus distinguishable from the lonely precedent of *Goss*, where a court found plaintiff's hearing tape tampering allegations sufficient to survive summary judgment. 2003 WL 22327110, at *6. In *Goss*, the hearing officer had allegedly tampered with the tape only with respect to the testimony of a single witness, who testified in plaintiff's favor. *Id.* The audio tape was complete, except for one obvious gap. *Id.* Such facts give rise to an inference of tampering that is entirely lacking here, where Plaintiff merely alleges the recording is missing.

23

4.  Qualified Immunity

Qualified immunity protects government employees from civil liability while acting

within their individual capacities so long as their conduct "does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Ford v.*

*McGinnis*, 352 F.3d 582, 596 (2d Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).  Determining whether an official is entitled to qualified immunity involves a two-step

inquiry:  first, "whether a constitutional right was violated"; and second, "whether that right was

clearly established."  *Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 165 (2d Cir. 2002)

(internal quotation marks and citations omitted).  "A right is clearly established if (1) the law is

defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the

right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his]

conduct was unlawful.'"  *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young*

*v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)).

Defendants seek to assert qualified immunity with respect to Defendants Nurse Scalzo,

Nurse Cavanagh, and Dr. Paolano.[16]

In claiming qualified immunity, these Defendants conclusorily assert that the rights at

stake here were not clearly established.  They support this proposition with two cases, both of

which rejected qualified immunity defenses for the involved defendants.  *See Diamondstone v.*

---

[16] Qualified immunity is also invoked for Defendants Doling and Brockway.  Because summary judgment is granted to these Defendants on other grounds, discussed *supra*, the Court need not inquire into any qualified immunity they might have.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

*Macaluso*, 148 F.3d 113, 126-27 (2d Cir. 1998) (reversing district court finding that defendants were entitled to qualified immunity defense because a reasonable person would have known the actions at issue were illegal); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 351 (S.D.N.Y. 1998) (rejecting qualified immunity defense because rights at stake were clearly established). The law of the Supreme Court and the Second Circuit demonstrates that the rights at issue in this case have been defined with reasonable clarity and recognized by the relevant courts. Prisoners have a right to be free from forced medication absent a justifying factor, *Washington*, 494 U.S. at 221-222; from violations of due process, *Wolff*, 418 U.S. at 563-567; and from deliberate indifference to their serious medical needs, *Estelle*, 429 U.S. at 104. Thus, the only question at issue here is whether "a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." *Anderson*, 317 F.3d at 197 (internal quotation marks omitted) (alterations in original).

Defendant Scalzo is not entitled to qualified immunity. In this case, there is a dispute over who authorized the forcible administration of drugs to Plaintiff. Plaintiff alleges in his Amended Complaint that Defendant Kerns, a correction officer, ordered that Plaintiff be forcibly administered the medication. (Am. Compl. ¶13.) Defendant Scalzo stated that he received an order from the psychiatrist on call to give Plaintiff an injection of medication because Plaintiff had covered himself with his own excrement. (Defs.' 56.1, Ex. A.) Taking Plaintiff's version as true, the Court concludes that a reasonable nurse should have known that a correction officer is unable to authorize the administration of drugs to an inmate. *Cf. Washington*, 494 U.S. at 221-22 (inmates have a right to due process prior to the forcible administration of psychiatric medication); *Batts v. Boganoff*, No. 04-CV-1191, 2005 WL 3543774, at *6 (D. Conn. Dec. 8,

2005) ("If an inmate has a serious mental illness, correctional officials can treat that inmate with anti-psychotic medications against his will only when the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." (internal quotation marks omitted)); *Sheridan v. Dubow*, No. 92-CV-6024, 1993 WL 336946, at *3 (S.D.N.Y. Sept. 3, 1993) (stating that a state may treat a prisoner with anti-psychotic drugs against his will only after administrative determination that he is dangerous to himself or others and that treatment is in his interest). There is a dispute of material fact that must be resolved prior to determining whether Defendant Scalzo's actions were unreasonable. Thus, summary judgment on the basis of Defendant Scalzo's qualified immunity defense is inappropriate. *See Goss*, 2003 WL 22327110, at *7 (refusing to grant qualified immunity where material facts relevant to basis of immunity were in dispute).

The same can be said for Defendants Paolano and Cavanagh. "[T]o establish their qualified immunity defense, the defendants must show that it was objectively reasonable for them to believe that they had not acted with the requisite deliberate indifference." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (internal quotation marks and citations omitted). As explained above, there is a factual dispute over whether Cavanagh and Dr. Paolano were deliberately indifferent to Plaintiff's medical needs, and whether their decisions not to treat Plaintiff's wounds reflected deliberate indifference. Thus, summary judgment on the basis of qualified immunity for these Defendants is inappropriate as well.

### 5.  Remaining Claims

Having reviewed the remainder of the R&R for clear error, the Court finds none. Accordingly, the Court adopts the recommendation with respect to Defendant Chiesa and

26

summary judgment on all claims against her is GRANTED in her favor.

### III.  Motion for Order Directing Return of Hearing Aid

#### A.  Nature of Motion

Plaintiff filed papers seeking "an order pursuant to Rule 7(b) of the Federal Rules of Civil Procedure granting an Order Directing Defendant Albert Paolano and his fellow medical staff personnels [sic] to return plaintiff back his hearing aid and kit. . . ."  (Dkt. 142.)  Although Plaintiff's submission is not entirely clear, he seems to allege that Dr. Paolano or one of his staff members acted "maliciously and sadistically to cause harm" to Plaintiff by ordering Plaintiff's hearing aid, which he claims to be a medical necessity, removed from his cell on November 16, 2006.

Although it does not prejudice this Plaintiff's case in light of his pro se status, Plaintiff's pleading appears to misunderstand Rule 7(b).  The purpose of Rule 7 was to liberalize pleadings so that, without regard to anachronistic elements of form, they would "inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2008).  Rule 7 is not a broad invitation to a litigant to move the court to issue structural injunction.  Here, the most liberal reading of Plaintiff's papers is that he is seeking leave to further amend his Amended Complaint to assert a new claim against an existing Defendant.

Because the factual predicate to any such claim is not clear, the Court cannot fairly evaluate the Motion for Leave to Amend.  Accordingly, the Motion is denied without prejudice to renewal as a Motion for Leave to Amend the Amended Complaint.  Plaintiff is cautioned that

any such motion must make factual allegations sufficient to explain what Plaintiff believes was improperly done to him in violation of his rights (in sufficient detail so that any defendant will have fair notice of the allegations against him or her), *who exactly* took such actions, and why Plaintiff believes these actions were not permitted by the law.

Plaintiff shall have thirty days to file any Motion for Leave to Amend on the basis of these facts. In light of Plaintiff's history with this Court, the age of this case, and the interest of all Parties and the Court in advancing the case to resolution, this deadline shall be strictly enforced.

<u>IV. Motion for Appointment of Counsel</u>

Plaintiff has moved for appointment of counsel. Plaintiff evidently seeks to invoke 28 U.S.C. § 1915(e)(1), which provides that a court "may request an attorney to represent any person unable to afford counsel."

The Second Circuit has instructed that a district court's first task in deciding whether to exercise this discretion is to "'determine whether the indigent's position seems likely to be of substance.'" *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Here, faced with a litigant who has been found to have filed many frivolous or malicious actions in this and other courts, the Court has no trouble finding that Plaintiff's position does not seem likely to be of substance. *Cf. Polanco v. Ercole*, No. 06-CV-1721, 2007 WL 2192054, at *9 (S.D.N.Y. July 31, 2007) ("[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor."). Put another way, while Plaintiff has (barely) survived summary judgment, the Court does not find this to be a case of substance.

28

Accordingly, Plaintiff's Motion is Denied, without prejudice should circumstances change.

### V. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART: summary judgment is GRANTED to Defendants Brockway, Doling, and Chiesa for all claims against them; summary judgment as to all remaining claims and Defendants is DENIED.

Plaintiff's Motion for an Order regarding his hearing aid is DENIED without prejudice to renewal within 30 days as a Motion for Leave to Further Amend the Complaint.

Plaintiff's Motion for Appointment of Counsel is DENIED without prejudice.

The Clerk of Court is respectfully directed to terminate the pending motions on the Docket (Nos. 142, 144) and to terminate Lt. Brockway, Richard Doling, and Stephanie Chiesa as Defendants in this case, although retaining the case as open for disposition of remaining claims.

SO ORDERED.

Dated:      June 17, 2008
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

Copies Mailed by Chambers:

Mr. Jonathan Odom
92-T-0387
Auburn Correctional Facility
135 State Street, Box 618
Auburn, NY 13024
*Pro Se Plaintiff*

Michael J. Keane, Esq.
Office of The Attorney General
120 Broadway
New York, NY  10271
*Counsel for Defendants*